WILLIAM H. CARLISLE, Plaintiff v. FLETCHER G. KEITH, CECILIA K. SMITH, MARGARET M.(PEGGY) KEITH, N. DEANE BRUNSON, STONEHAVEN, INC., a North Carolina Corp., W.O.L., INC., a North Carolina Corp., and K&K REAL ESTATE, INC., a North Carolina Corp., Defendants

No. COA04-819

(Filed 19 April 2005)

**1. Statutes of Limitation and Repose— fiduciary duty—attorney in real estate transaction—last act giving rise to damages**

The trial court did not err by granting defendant-Brunson's Rule 12(b)(6) motion to dismiss a claim of breach of fiduciary duty where Brunson was an attorney involved in a partnership's real estate transactions; the last act giving rise to plaintiff's damages was more that six years before Brunson was named as a defendant regarding one subdivision, and eight years before the lawsuit was filed regarding another subdivision; and both the statute of repose and the statute of limitations had long since passed.

**2. Statutes of Limitation and Repose— fraud—attorney in real estate transaction—discovery of facts—attorney-client relationship**

A claim for fraud against an attorney arising from a real estate transaction was correctly dismissed pursuant to a Rule 12(b)(6) motion for failure to meet the statute of limitations.

**3. Statutes of Limitation and Repose— negligent misrepresentation—attorney in real estate transaction—damages apparent**

The trial court properly concluded that a claim against an attorney for negligent misrepresentation in a real estate transaction was barred by the applicable statute of limitations. Although the statute of limitations is three years, plaintiff's damage (his sale of property to a buyer in which his partner had an ownership interest) became apparent more than five years before he began this action.

**4. Statutes of Limitation and Repose— civil conspiracy—attorney in real estate transaction**

Plaintiff's claim for civil conspiracy was time barred because it was brought more than six years and eight years after the real estate transactions involved.

CARLISLE v. KEITH

[169 N.C. App. 674 (2005)]

**5. Statutes of Limitation and Repose— constructive fraud— real estate transaction—adding defendant**

A claim for constructive fraud arising from a real estate transaction was time-barred where plaintiff learned of the relationship between defendants in February 1998 and did not add this defendant until 2003, two years after the statute of limitations ran.

**6. Statutes of Limitation and Repose— failure to affirmatively plead defense—plaintiff not surprised**

The trial court properly considered defendant's statute of limitations defense as to plaintiff's claims for fraud, negligent misrepresentation, and civil conspiracy where plaintiff argued that defendant had not affirmatively pled the statute of limitations in his motion to dismiss and that he was surprised by defendant's statute of limitations argument, but plaintiff received defendant's brief on his statute of limitations defense prior to the hearing, argued that issue before the trial court, and did not object that the defense was identified in defendant's memorandum rather than in his motion.

**7. Civil Procedure— Rule 12(b)(6) motion—legal memoranda considered—not converted to summary judgment**

The trial court did not err by not converting defendant's Rule 12(b)(6) motion to dismiss into a motion for summary judgment where counsel presented memoranda on the law without exhibits and did not present any factual evidence or allegations which the trial court could only properly address with a summary judgment hearing.

Appeal by plaintiff from order filed 15 March 2004 by Judge W. Erwin Spainhour in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 February 2005.

*Whitesides & Walker, L.L.P., by H.M. Whitesides, Jr. and Jennifer S. Anderson for plaintiff.*

*Moore & Van Allen PLLC, by Jeffrey J. Davis, for plaintiff.*

*Poyner & Spruill LLP, by E. Fitzgerald Parnell, III and Cynthia L. Van Horne, for defendant N. Deane Brunson.*

BRYANT, Judge.

William H. Carlisle (plaintiff) appeals an order filed 15 March 2004, dismissing all causes of action against N. Deane Brunson (defendant) pursuant to Rule 12(b)(6).

## Procedural History

On 22 April 2003, plaintiff filed an amended complaint against defendants Fletcher G. Keith (Keith), Cecilia K. Smith (Smith), Margaret M. (Peggy) Keith (Peggy Keith), N. Deane Brunson (Brunson), Stonehaven, Inc. (Stonehaven), W.O.L., Inc. (WOL), and K&K Real Estate, Inc. (K&K), alleging various causes of action.

Against Brunson, plaintiff asserted claims for breach of fiduciary duty, fraud, negligent misrepresentation, civil conspiracy, and constructive fraud. Each of the defendants, with the exception of WOL, filed a motion to dismiss, and in the alternative, a motion for a more definite statement. Brunson filed his motion to dismiss on 11 July 2003.

On 9 February 2004, plaintiff and Brunson served memoranda of law pertaining to the motions to dismiss, and on 10 February 2004, plaintiff filed a single page amendment to his amended complaint. This matter came for hearing at the 11 February 2004 civil session of Mecklenburg County Superior Court with the Honorable W. Erwin Spainhour presiding. By order filed 15 March 2004, the trial court granted Brunson's motion to dismiss. The trial court certified, pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), that its order granting Brunson's motion was a final judgment as to Brunson and that there was no just reason for delay for the purpose of appeal.

Plaintiff filed timely notice of appeal.

## Facts

The facts according to plaintiff are as follows: On 1 February 1989, defendant Keith and Ray Hollowell formed Hatteras Island Plaza Partnership (HIPP) pursuant to the North Carolina General Partnership Act for the purpose of developing property in Dare County, North Carolina. Defendant Smith became owner of a 1.5% interest in HIPP on 9 April 1992. On 15 June 1993, Hollowell resigned his interest in HIPP, and plaintiff became owner of a 49.25% interest in the partnership. Brunson, an attorney licensed to practice law in North Carolina, acted as the attorney for HIPP and represented the

partnership and its individual partners in both partnership and personal matters.

*Hatteras Island Plaza*

Consistent with its plan to develop property, HIPP purchased a shopping center on 16 May 1991 for $2.2 million and named the property Hatteras Island Plaza (HIP). Plans were formulated to develop the entire tract of land in several phases to compliment the existing grocery store and to include other shops, restaurants, a drug store, and cinema. Financing was arranged and an appraisal ordered by First Union National Bank. The appraiser, John McCracken, prepared two appraisals, one in February 1996 in which he valued HIP at $2.1 million and the second approximately one month later in which he valued HIP at $2.8 million.

Although Keith was aware of both appraisals, plaintiff was not informed of the second higher appraisal by Keith or by any other defendant to this action. Subsequently, Keith requested a third appraisal, which was completed in September 1996 by Raspberry & Associates (the Raspberry appraisal). Raspberry & Associates valued the property between $9.3 and $11 million once HIP was completed. Keith, Smith, and Brunson were aware of the results of the Raspberry appraisal, but neither informed plaintiff of the request for nor the results of the appraisal.

In December 1996, the partners of HIPP sought to refinance the HIPP First Union National Bank debt with BB&T Bank (BB&T) by obtaining a loan on behalf of HIPP. Keith, without notifying plaintiff, submitted only the first appraisal of $2.1 million to BB&T. Brunson wrote a title opinion letter to BB&T on behalf of HIPP, and BB&T subsequently refinanced the existing debt of HIPP.

The accounting and bookkeeping for HIPP was being conducted by Metro Management Co. (Metro) which is owned by defendant Peggy Keith, wife of defendant Keith. One of Metro's employees was Virginia Goodrum whose primary job was to handle various accounting duties for plaintiff.

One month after the refinancing in January 1997, Keith offered Virginia Goodrum $10,000.00 if she could persuade plaintiff to sell his interest in HIP. Keith advised Goodrum that plaintiff would never willingly sell his interest in the property to defendant Keith. Goodrum subsequently proposed to plaintiff that he sell his interest in HIP to

defendant Stonehaven, a North Carolina corporation incorporated on 3 February 1997. Because plaintiff believed that Keith was also selling his interest in HIP to Stonehaven, he agreed to the sale.

No one disclosed to plaintiff that Keith was a shareholder and an officer in Stonehaven, and that Smith was owner of a 1.5% interest in Stonehaven. Also, no one disclosed to plaintiff that Stonehaven and Metro maintained identical places of business, and that Metro handled the accounting and bookkeeping services for Stonehaven and even collected rents from tenants at HIP for Stonehaven before Stonehaven ever owned the HIP property.

Keith, Peggy Keith, Smith, and Brunson all failed to inform plaintiff that Keith and Smith had ownership interests in Stonehaven. In fact, plaintiff asked Brunson if he knew anything about the purchaser (Stonehaven), and Brunson replied that he did not. Notably, Brunson was acting as attorney for Stonehaven and HIPP and its partners, including plaintiff, and Brunson and Keith, Smith and Peggy Keith also withheld this information from plaintiff.

Nine days after its incorporation on 11 February 1997, Stonehaven borrowed $3.2 million from BB&T to assume the existing loan from BB&T to HIPP. With the money, Stonehaven purchased HIP from the partners of HIPP for $3.2 million, well below its estimated value of $9.3 to $11 million. Keith, Peggy Keith, Smith, and Brunson knew that the value of HIP was more than the $3.2 million purchase price but did not inform plaintiff of this information. Prior to the closing, Keith and Peggy Keith signed personal guaranties to BB&T for the loan to Stonehaven and withheld this information from plaintiff. A copy of an indemnity agreement whereby Keith absolves the president of Stonehaven from any liability was placed in Brunson's HIPP file.

From the closing proceeds, Brunson was paid $7,000.00 by Stonehaven as buyer of HIP and $3,000.00 by HIPP as seller of HIP. Settlement statements were generated by Brunson whereby Keith signed as both "seller" of his interest in HIP and "buyer" as a representative of Stonehaven. Brunson also prepared a fraudulent statement, distributed by Brunson to plaintiff, showing that real estate commissions of $128,000.00 were paid to Elm Realty.

Elm Realty, in fact, was a fictitious company and did not generate any real estate commissions for the sale of HIP. The $128,000.00 commission to Elm Realty was never paid by Brunson out of his trust

account or any other account, but instead was kept by defendant Stonehaven and later distributed to Keith.

One month later in March 1997, Stonehaven requested a loan of $3.9 million to expand HIP to include a cinema. BB&T agreed to loan Stonehaven $3.9 million only if Stonehaven could produce an appraisal of HIP valuing it at more than $6 million. Accordingly, Keith, or someone acting on behalf of Stonehaven, presented to BB&T the Raspberry appraisal that was not presented to BB&T in December 1996. Thereafter, on 13 March 1997, BB&T loaned $3.9 million to Stonehaven. BB&T further required personal guaranties from Keith and Peggy Keith, and without those guaranties, BB&T would not have loaned Stonehaven the $3.9 million. Brunson continued to represent Stonehaven in the refinancing of HIP, and once again his legal representation and information about the refinancing were withheld from plaintiff.

On 6 January 1999, Stonehaven deeded two parcels of HIP to defendant K&K, a North Carolina corporation controlled by Keith and Peggy Keith. Brunson represented Stonehaven in the transfer of the two parcels. The transfers were not made for valuable consideration but instead in anticipation of litigation in this matter.

*Forrestbrook*

In 1991, Keith and plaintiff each owned a 50% interest in undeveloped land known as "Forrestbrook" in Kannapolis, North Carolina through a *de facto* North Carolina partnership. On 9 October 1995, Keith and plaintiff sold their interest in Forrestbrook for $760,000.00 to defendant WOL, a North Carolina corporation. On the same day as the closing, Keith acquired a 50% interest in WOL. Keith and Brunson, however, failed to inform plaintiff of Keith's ownership interest in WOL prior to the sale. Keith and Brunson also failed to inform plaintiff that prior to the closing, a development contract had been obtained to develop the Forrestbrook property into a residential subdivision and an appraisal of Forrestbrook had been conducted, valuing the property at $1.2 million.

At the closing, Elm Realty, a fictitious company, was paid $22,000.00 for real estate commissions from the closing proceeds, which money was deposited into defendant WOL's bank account. Also on the same day as the closing, Metro and Virginia Goodrum were paid $7,600.00 and $5,000.00, respectively, although neither performed any services to generate such a commission.

*Interlocutory Appeal*

A judgment is either interlocutory or a final determination of the rights of parties. N.C.G.S. § 1A-1, Rule 54(a) (2003); *see Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950). An order is interlocutory if it is entered during the pendency of an action and does not dispose of the case, but requires further action by the trial court to finally determine the rights of all the parties involved in the controversy. *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381. Generally, there is no right to appeal from an interlocutory order. *See* N.C.G.S. § 1A-1, Rule 54(b) (2003). Our courts, however, have recognized two avenues for appealing interlocutory orders.

Under Rule 54(b), when multiple parties or claims are involved in an action and the court enters a final judgment that adjudicates one or more of the parties or claims, such judgment, although interlocutory in nature, may be appealed if the trial court certifies that there is no just reason for delay. N.C.G.S. § 1A-1, Rule 54(b); *see Hoots v. Pryor*, 106 N.C. App. 397, 401, 417 S.E.2d 269, 272 (1992). In this case, the trial court certified the matter as immediately appealable pursuant to Rule 54(b); however, such certification is not dispositive. *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 247, 507 S.E.2d 56, 60 (1998).

In *Hudson-Cole Development Corp. v. Beemer*, 132 N.C. App. 341, 511 S.E.2d 309 (1999), this Court stated:

> When common fact issues overlap the claim appealed and any remaining claims, delaying the appeal until all claims have been adjudicated creates the possibility the appellant will undergo a second trial of the same fact issues if the appeal is eventually successful. This possibility in turn "creates the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue."

*Hudson-Cole Development Corp.*, 132 N.C. App. at 345, 511 S.E.2d at 312 (quoting *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 25, 376 S.E.2d 488, 491 (1989)). The Court in *Hudson-Cole* ultimately held that the order dismissing plaintiff's claims against the defendant for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, was immediately appealable.

Accordingly, we hold the appeal in the instant case is immediately appealable.

The issues on appeal are whether the trial court erred by: (I) granting defendant's Rule 12(b)(6) motion to dismiss; (II) considering defendant's statute of limitations defense as to plaintiff's cause of action for fraud, negligent misrepresentation, and civil conspiracy when defendant did not affirmatively plead such defense in his written motion; and (III) failing to convert defendant's Rule 12(b)(6) motion into a motion for summary judgment when it considered matters outside of the pleadings during the hearing on the motion to dismiss.

I

**[1]** Plaintiff first argues that the trial court erred by granting defendant's Rule 12(b)(6) motion to dismiss when plaintiff stated, against defendant, claims upon which relief could be granted.

"A Rule 12(b)(6) motion tests the legal sufficiency of the pleading." *Sterner v. Penn*, 159 N.C. App. 626, 628, 583 S.E.2d 670, 672 (2003). When determining whether a complaint is sufficient to withstand a Rule 12(b)(6) motion to dismiss, the trial court must discern "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Shell Island Homeowners Ass'n. Inc. v. Tomlinson*, 134 N.C. App. 217, 225, 517 S.E.2d 406, 413 (1999). "When considering a 12(b)(6) motion to dismiss, the trial court need only look to the face of the complaint to determine whether it reveals an insurmountable bar to plaintiff's recovery." *Locus v. Fayetteville State University*, 102 N.C. App. 522, 527, 402 S.E.2d 862, 866 (1991).

" 'Dismissal of a complaint is proper under the provisions of Rule 12(b)(6) of the North Carolina Rules of Civil Procedure . . . when some fact disclosed in the complaint necessarily defeats the plaintiff's claim.' " *Hooper v. Liberty Mut. Ins. Co.*, 84 N.C. App. 549, 551, 353 S.E.2d 248, 250 (1987) (quoting *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)). A motion to dismiss under Rule 12(b)(6) is an appropriate method of determining whether the statutes of limitation bar plaintiff's claims if the bar is disclosed in the complaint. *Horton v. Carolina Medicorp*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996).

### Breach of Fiduciary Duty

In his third cause of action, plaintiff asserts, among other things, "Brunson was the attorney for and represented HIPP and its partners and therefore owed a fiduciary duty of good faith, fair dealing and full

disclosure to each partner, including [plaintiff];" "Brunson wrote a title opinion letter on behalf of [the partnership];" Brunson represented Stonehaven; "Brunson was paid a legal fee for representing the seller and the buyer;" Brunson generated settlement statements for the buyer and for the seller; and he represented Stonehaven in a refinance of its associated indebtedness.

The complaint alleges that defendant is being sued "as attorney for HIPP . . . [and] its partners, one of whom was [plaintiff];" and because of such activities the plaintiff is entitled to recovery from defendant.

This Court has held that a "[b]reach of fiduciary duty is a species of negligence or professional malpractice." *Heath v. Craighill, Rendleman, Ingle & Blythe, P.A.*, 97 N.C. App. 236, 244, 388 S.E.2d 178, 183 (1990); *See NationsBank v. Parker*, 140 N.C. App. 106, 535 S.E.2d 597 (2000). Further, the legislature has provided:

> [A] cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action:

> Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made:

> Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years.

> Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action . . . .

N.C.G.S. § 1-15(c) (2003).

Here, plaintiff has alleged that defendant's "last act" giving rise to damages sustained by plaintiff in connection with the Stonehaven transaction occurred in February 1997—more than six years before defendant was named as a defendant on 22 April 2003. Moreover, the

Forrestbrook Subdivision transaction is alleged to have occurred two years earlier, or some eight years before Brunson was added to plaintiff's lawsuit. Whether the three-year statute of limitations or the four-year statute of repose applies is immaterial as both had long passed by the time plaintiff sued defendant.

The trial court appropriately determined that the third claim for relief should be dismissed pursuant to Rule 12(b)(6).

## Fraud

[2] The statute of limitations for actions for fraud is three years pursuant to N.C. Gen. Stat. § 1-52(9). A cause of action alleging fraud is deemed to accrue upon discovery by plaintiff of facts constituting the fraud. *Id.* " 'Discovery' is defined as actual discovery or the time when the fraud should have been discovered in the exercise of due diligence." *Spears v. Moore*, 145 N.C. App. 706, 708, 551 S.E.2d 483, 485 (2001).

The core of plaintiff's claim is that he has suffered damages by agreeing to sell his partnership interest to Keith, which he would have refused to do had he known of Keith's ownership interest in the buyer. However, plaintiff received actual notice of Keith's ownership in Stonehaven as of February 1998. Any fraud claim predicated on defendant's alleged failure to reveal or misrepresentation concerning Keith's interest in Stonehaven accrued then and had to have been brought within three years or by February 2001. Plaintiff waited until 22 April 2003 to bring his action against defendant.

Plaintiff argues the attorney-client relationship which formerly existed between plaintiff and defendant extended the time within which plaintiff had to bring an action alleging fraud. ("Because of this confidential relationship, any failure on behalf of Carlisle to discover the facts constituting Brunson's fraud may be excused."). Plaintiff's claim that he is not required to adhere to the discovery provisions of the statute of limitations because he has sued a lawyer with whom he had an attorney-client relationship simply cannot be sustained in light of recent decisions of this Court.

Whatever uncertainty may have earlier existed concerning extensions of the statute of limitations in professional liability cases, the issue was squarely addressed by this Court in *Delta Environmental Consultants, Inc. v. Wysong & Miles, Co.*, 132 N.C. App. 160, 510 S.E.2d 690 (1999), and *Sharp v. Gailor*, 132 N.C. App. 213, 510 S.E.2d 702 (1999). In *Delta Environmental,* after reviewing the evolution of

the "continuing course of treatment doctrine" in medical malpractice cases, this Court elected not to expand the doctrine's breadth to encompass negligence claims arising out of professional engineering services between sophisticated corporate parties. *Delta Environmental*, 132 N.C. App. at 172, 510 S.E.2d at 698.

In *Sharp*, decided the same day as *Delta Environmental*, this Court applied the "no extension" principle to a legal malpractice action, dating the accrual of the claim against the lawyer to the day the defendant attorney filed a brief in this Court, and not later when the plaintiff fired the defendant.

Similarly in *Teague v. Isenhower*, 157 N.C. App. 333, 579 S.E.2d 600, *review denied*, 357 N.C. 470, 587 S.E.2d 347 (2003), this Court rejected the plaintiff's argument that the defendant's continuing representation for more than a year after the defendant's last act giving rise to the cause of action should extend the statute of limitations.

Thus, plaintiff's assertion here that "[i]t is not alleged in the Complaint when Brunson stopped acting as counsel for Carlisle or Stonehaven," is of no relevance. The issues are when the last act of defendant occurred and when plaintiff learned of Keith's ownership in the buyer of the property. A review of plaintiff's allegations establishes that date to be February 1998 (at the latest)—more than three years preceding the institution of this action against defendant.

## Negligent Misrepresentation

[3] The statute of limitations for negligent misrepresentation is three years pursuant to N.C. Gen. Stat. § 1-52. *Hunter v. Guardian Life Ins. Co.*, 162 N.C. App. 477, 593 S.E.2d 595, *disc. review denied*, 358 N.C. 543, 599 S.E.2d 48, *disc. review denied*, 358 N.C. 543, 599 S.E.2d 49 (2004). Unlike a claim for fraud, a claim for negligent misrepresentation, where it exists, "accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Penley v. Penley*, 314 N.C. 1, 20, 332 S.E.2d 51, 62 (1985). N.C. Gen. Stat. § 1-52(16), provides: "except in causes of action referred to in G. S. § 1-15(c) [such claims] shall not accrue until . . . damage to [plaintiff's] property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C.G.S. § 1-52(16) (2003).

Inasmuch as plaintiff knew of Keith's ownership interest in Stonehaven not later than February 1998, he experienced "damage" which was "apparent or reasonably ought to have become apparent

to the claimant" no later than that time. Since this action was not instituted until more than five years later, the trial court properly concluded that the claim for negligent misrepresentation was barred by the applicable statute of limitations.

### Civil Conspiracy

**[4]** Plaintiff asserts that his claim of conspiracy against defendant is "based on breach of fiduciary duty, fraud, and negligent misrepresentation." This Court has applied the three-year limitations period of N.C. Gen. Stat. § 1-52(5) to a civil conspiracy claim. *See Norlin Indus., Inc. v. Music Arts, Inc.*, 67 N.C. App. 300, 306, 313 S.E.2d 166, 170 (1984). Because Plaintiff brought his conspiracy claim more than six years after the date of the HIP transaction and eight years after the Forrestbrook Subdivision transaction, this claim was time barred.

### Constructive Fraud

**[5]** The statute of limitations in actions for constructive fraud is three years pursuant to N.C. Gen. Stat. § 1-52, which accrues upon discovery of the facts constituting the fraud. In *Hunter*, this Court announced "[t]he statute of limitations for fraud, constructive fraud, and negligent misrepresentation is three years. . . . Regarding claims based on fraud or mistake, the cause of action does not accrue until the injured party discovers the facts constituting the fraud." *Hunter*, 162 N.C. App. at 485, 593 S.E.2d at 601. "The Supreme Court of our State has held in numerous cases that in an action grounded on fraud, the statute of limitations begins to run from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence." *Id.*

As demonstrated above, plaintiff learned that Keith was involved in the ownership of Stonehaven in February 1998. His cause of action for constructive fraud accrued then, and any claim predicated on defendant's alleged failure to reveal information about or misrepresentation concerning Keith's interest in Stonehaven had to have been brought by February 2001—two years before plaintiff added defendant to this lawsuit.

This assignment of error is overruled.

### II

**[6]** Plaintiff next argues that the trial court erred by considering defendant's statute of limitations defense as to plaintiff's causes of action for fraud, negligent misrepresentation, and civil conspiracy

when defendant failed to affirmatively plead such defense in his written motion.

N.C. Gen. Stat. § 1A-1, Rule 7(b)(1) states:

An application to the court for an order shall be by motion which, unless made during a hearing or trial or at a session at which a cause is on the calendar for that session, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

N.C.G.S. § 1A-1, Rule 7(b)(1) (2003).

In his motion to dismiss filed 11 July 2003, some seven months before the hearing of the motions, defendant "move[d] the Court to dismiss the amended complaint of William H. Carlisle pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure or, in the alternative, pursuant to Rule 12(e) of the North Carolina Rules of Civil Procedure, as to certain claims, to require Plaintiff to provide a more definite statement of the factual basis for the claims alleged." Certain arguments were then set out in support of the general motion to dismiss.

Plaintiff claims in his brief that he was "surprised" regarding defendant's argument that the statute of limitations barred his allegations in his fourth, fifth and sixth causes of action. However, this is the first time such an assertion has been made in this action as the record does not reflect plaintiff presented an objection before the trial court.

In his original complaint, plaintiff alleged, "[o]n or about February 1998, he discovered Keith may have had a financial interest in Stonehaven, Inc. and W.O.L., Inc." When he amended his lawsuit to add Brunson as a defendant, plaintiff deleted the date on which he alleged he obtained knowledge of Keith's ownership interest.

However, less than a month before the hearing, counsel for defendant uncovered plaintiff's admission to Keith's request for admission number 15: "[A]dmit that you knew Keith held an ownership interest in Stonehaven no later than February 1998. Admitted." In light of the admission by plaintiff that he knew of Keith's ownership interest in Stonehaven no later than February 1998, defendant decided to pursue motions to dismiss based on statute of limitations on the fourth, fifth and sixth causes of action.

CARLISLE v. KEITH

[169 N.C. App. 674 (2005)]

Defendant briefed his position with respect to the statutes of limitations in his memorandum served two days before the hearing, asserting defendant's position that plaintiff's claims for breach of fiduciary duty, fraud and negligent misrepresentation as well as the claim for civil conspiracy were all barred by the applicable statute of limitations.

Two days before the hearing on the motions, plaintiff served a twenty-six page memorandum in opposition to defendant's motions in which he briefed the statute of limitations on fraud actions, negligent misrepresentation, breach of fiduciary duty, and civil conspiracy.

When a plaintiff responds to a motion to dismiss on the merits, and fails to notify the trial court of an objection to a procedural irregularity, he may be held to have waived that objection. *See Thurston v. United States*, 810 F.2d 438, 444 (4th Cir. 1987). Otherwise, it is the trial court which is deprived of an opportunity to remedy any error that may have existed. *Id.*

This Court has held that a trial court may consider a statute of limitations defense, though not raised in a motion to dismiss, when "the non-movant 'has not been surprised and has full opportunity to argue and present evidence' on the affirmative defense." *Johnson v. North Carolina DOT*, 107 N.C. App. 63, 66-67, 418 S.E.2d 700, 702 (1992). By briefing and arguing before the trial court that his causes of action were not time barred, plaintiff misrepresented his current claim that he was "surprised" by the limitations defense.

The *Johnson* Court held that the plaintiff had not been "surprised" "by the defendant's reliance upon the statute of limitations defense because the trial court heard argument from both parties on the issue and "the record does not reflect that plaintiff, at any time during the proceeding, objected to [defendant's] failure to specifically allege the statute of limitation in the motion." *Johnson*, 107 N.C. App. at 67, 418 S.E.2d at 702-03. The same reasoning applies here.

Plaintiff received defendant's briefing on his statute of limitations defense prior to the hearing on the motions, presented argument on that issue before the trial court, and did not object that defendant had identified the statute of limitations defense in his memorandum rather than in his motion.

Finally, the motion met the requirements of Rule 7(b)(1) in that the motion was in writing and stated with sufficient particularity the grounds for dismissal. The trial court properly considered defend-

ant's statute of limitations defense as to plaintiff's claim for fraud, negligent misrepresentation, and civil conspiracy. This assignment of error is overruled.

## III

[7] Last, plaintiff argues the trial court erred by failing to convert defendant's Rule 12(b)(6) motion to dismiss into a motion for summary judgment when it considered matters outside of the pleadings during the hearing on the motion to dismiss.

N.C. Gen. Stat. § 1A-1, Rule 12(b) states:

If, on a motion asserting the defense numbered (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

N.C.G.S. § 1A-1, Rule 12(b) (2003).

In the instant case, the trial court stated in its order that it "having reviewed the pleadings, Defendant Brunson's Memorandum in Support of Motion to Dismiss, Plaintiff's Memorandum in opposition to Motion to Dismiss, and having heard arguments and statements of counsel, the Court concluded that each claim asserted by Plaintiff against Defendant Brunson fails to state a claim upon which relief can be granted." On a previous occasion, our Court has held "[t]he trial court's consideration of evidence other than the pleading is contrary to the purpose of Rule 12(b)(6)." *Kemp v. Spivey*, —— N.C. App. ——, ——, 602 S.E.2d 686, 690 (2004) ("Based on the trial court's consideration of matters in addition to the complaint, defendant's Rule 12(b)(6) motion was thereby converted into a motion for summary judgment."). The present case, however, is distinguishable.

G. Gray Wilson clarifies:

The final provision of Rule 12(b) is limited to a motion to dismiss for failure to state a claim upon which relief may be granted under subsection (6). If at the hearing on such a motion the court considers matters outside the pleading, the motion must be treated as one for summary judgment pursuant to Rule 56. While Rule 12(b) contemplates that a motion to dismiss for failure to state a claim is to be considered by merely reviewing the plead-

ings, the last provision of this rule creates one exception. Whether matters outside the pleading are to be considered is left up to the discretion of the court, but the rule is explicit that a party must first present such materials to the court for review. The court may not convert the motion to dismiss to one for summary judgment by developing an evidentiary record on its own initiative. **While extraneous matter usually consists of affidavits or discovery documents, it may also consist of live testimony, stipulated facts, [or] documentary evidence in a court's file.**

G. Gray Wilson, 1 *North Carolina Civil Procedure* §12-3, at 210-11 (2nd ed. 1995) (emphasis added); *see also Eastway Wrecker Serv. v. City of Charlotte,* —— N.C. App. ——, ——, 599 S.E.2d 410, 412 (2004) ("[I]t appears that the only documents other than the pleadings that were before the trial court in connection with the motion to dismiss were the plaintiff's exhibits to the complaint. Since the exhibits to the complaint were expressly incorporated by reference in the complaint, they were properly considered in connection with the motion to dismiss[.]"); *Baugh v. Woodard,* 56 N.C. App. 180, 287 S.E.2d 412 (1982); *Broome v. Pistolis,* 53 N.C. App. 366, 280 S.E.2d 794 (1981); *Roberts v. Heffner,* 51 N.C. App. 646, 277 S.E.2d 446 (1981).

Here, counsel for defendant presented a memorandum in support of his motion to dismiss and plaintiff presented a memorandum in opposition to the motion to dismiss. Neither memoranda contained attached exhibits for the trial court's review. Nor was the trial court asked to consider any "affidavits or discovery documents, . . . live testimony, stipulated facts, [or] documentary evidence in a court's file." G. Gray Wilson, 1 *North Carolina Civil Procedure* §12-3, at 211 (2nd ed. 1995).

Our review of the memoranda, leads this Court to the conclusion the documents did not present any factual evidence or allegations which the trial court could only properly address pursuant to a Rule 56 hearing for summary judgment. Rather, the memoranda reiterated the current status of the law, and only presented before the trial court the legal issue of whether plaintiff's claims against defendant were barred by the statute of limitations. This assignment of error is overruled. *See Coley v. North Carolina Nat'l Bank,* 41 N.C. App. 121, 126-27, 254 S.E.2d 217, 220 (1979) ("The obvious purpose of the above quoted provision contained in Rule 12(b) is to preclude any unfairness resulting from surprise when an adversary introduces extraneous material on a Rule 12(b)(6) motion, and to allow a party

BANC OF AM. SECS. LLC v. EVERGREEN INT'L AVIATION, INC.

[169 N.C. App. 690 (2005)]

a reasonable time in which to produce materials to rebut an opponent's evidence once the motion is expanded to include matters beyond those contained in the pleadings. In the present case these factors are conspicuously absent.").

Affirmed.

Judges TIMMONS-GOODSON and LEVINSON concur.