Wortman v. Hutaff, 2012 NCBC 9.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
| UNION COUNTY | 10 CVS 4082 |

STATE OF NORTH CAROLINA

UNION COUNTY

JUSTIN TODD WORTMAN, individually and in his representative capacity as Successor Trustee of the Dan L. Moser Trust, dated November 20, 2000, as subsequently amended,  JUDIE MOSER SHEPARD, CHELSEY SHEA FELTS and DARBY VON WORTMAN,

   Plaintiffs,

  v.

RICHARD R. HUTAFF, THOMAS M. MOYER, III, L. CARLTON TYSON, ESTATE OF CARL A. BOGGS, JR., CARL A. BOGGS, III, C. MARK TYSON, MILEY W. GLOVER, individually and in his representative capacity as Administrator C.T.A. of the ESTATE OF DAN L. MOSER, KLJ PROPERTIES, LLC, TOURNAMENT DRIVE INVESTORS, LLC, and POTTER & COMPANY, P.A.,

   Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 4082

ORDER AND OPINION

*Hedrick Gardner Kincheloe & Garofalo, LLP by Jeremy T. Canipe and James E. Hickmon for Plaintiffs.*

*Rountree, Losee & Baldwin, LLP by Geoffrey A. Losee for Defendant Thomas M. Moyer III.*

*Poyner Spruill, LLP by T. Richard Kane for Defendant Richard R. Hutaff.*

Murphy, Judge.

 {1} **THIS MATTER** is before the Court upon Defendants Thomas M. Moyer, III ("Moyer") and Richard R. Hutaff's ("Hutaff") (collectively, "Defendants") Supplemental Joint Motion to Dismiss the Amended Complaint pursuant to Rule

12(b)(6) of the North Carolina Rules of Civil Procedure. Defendants argue that Plaintiffs have failed to allege any act or omission by Defendants giving rise to a cause of action that occurred within three years of the filing of either the Original Complaint or the Amended Complaint, and accordingly, the Complaint as amended fails to state a claim upon which relief can be granted.

{2}     After hearing from the parties on September 21, 2011, and having considered the matters of record, the briefs and exhibits offered by the parties, and the arguments and contentions of counsel, the Court **DENIES** Defendants' Motion to Dismiss, finding as follows:

I.

PROCEDURAL HISTORY

{3}     On December 2, 2010, Plaintiffs filed their original Complaint in Union County Superior Court naming only Hutaff and Moyer as defendants. (Pls.' Resp. to Defs.' Supplemental Mot. to Dismiss 2.)

{4}     On January 6, 2011, this matter was designated a complex business case and subsequently assigned to this Court. (Assignment Order 1.)

{5}     On February 4, 2011, Defendants filed a Joint Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, with supporting brief. (Defs.' Joint Mot. to Dismiss 2.)

{6}     On February 24, 2011, Plaintiffs filed a Reply Brief. In their brief, Plaintiffs referenced an Amended Complaint which had not yet been filed. (Pls.' Reply to Defs.' Joint Mot. to Dismiss 2, 12.)

{7}     On March 18, 2011, Plaintiffs filed an Amended Complaint adding L. Carlton Tyson ("L. Tyson"); Estate of Carl A. Boggs, Jr. ("Estate of Boggs, Jr."); Carl A. Boggs, III; C. Mark Tyson; Miley W. Glover ("Glover"), individually and in his representative capacity as Administrator, C.T.A. of the Estate of Dan L. Moser; KLJ Properties, LLC ("KLJ"); Tournament Drive Investors, LLC; and Potter & Company, P.A. as defendants. (Am. Compl. 1, 41.)

{8}     The Court conducted a telephone hearing with the parties on March 21, 2011, to address Defendants' request for additional time to determine whether

the filing of Plaintiffs' Amended Complaint necessitated a modification of Defendants' Motion to Dismiss.

{9}     On June 15, 2011, Defendants filed a Supplemental Joint Motion to Dismiss the Amended Complaint, with supporting brief. (Defs.' Supplemental Joint Mot. to Dismiss 3.)

{10}    Plaintiffs filed a Response to Defendants' Supplemental Joint Motion to Dismiss on June 24, 2011, and the matter was heard in this Court on September 21, 2011. (Pls.' Resp. to Defs.' Supplemental Joint Mot. to Dismiss 11.)

II.

FINDINGS OF FACT

{11}    Defendant Hutaff is a North Carolina licensed attorney and certified public accountant. (Am. Compl. ¶¶ 29-30.) Defendant Moyer is a certified public accountant licensed to practice in North Carolina. (Am. Compl. ¶ 31.)

{12}    On August 6, 2002, Dan L. Moser executed a Last Will and Testament (the "Will") in which he nominated Defendants as co-executors. Mr. Moser died testate in Union County on February 20, 2006. (Am. Compl. ¶¶ 22, 24.)

{13}    Mr. Moser's Will provided that after payment of all taxes and delivery of general bequests, his residuary estate was to be paid to Defendants in their capacities as co-trustees of the pour-over Dan L. Moser Trust (the "Trust") and managed for the benefit of the Trust's beneficiaries. (Am. Compl. ¶ 25.)

{14}    Defendant Hutaff drafted the Will wherein he and Moyer were appointed co-executors of the Moser estate, and the amendment to the Dan Moser Trust wherein Hutaff and Moyer were appointed as successor co-trustees of the Trust. (Am. Compl. ¶¶ 26-28.)

{15}    The Court understands "residuary estate" to mean the "part of a decedent's estate remaining after payment of all debts, expenses, statutory claims, taxes, and testamentary gifts . . . have been made." BLACK'S LAW DICTIONARY 589 (8th ed. 2004). The Moser Trust, therefore, can not have any corpus until there has been a final determination made of Mr. Moser's residuary estate. (Am. Compl. ¶

25.) As of the writing of this opinion, the Moser estate has not been settled, and remains open.

{16} Defendants never indicated to the court or to the estate/trust beneficiaries that they did not intend to serve as co-trustees of the Trust, and in fact held themselves out as co-trustees. Defendants accepted the trusteeship obligations of the position as required by Chapter 36C of the North Carolina General Statutes. (Am. Compl. ¶¶ 40-43.)

{17} One of the estate's largest assets was Mr. Moser's interest in Carolina Golf Developers, LLC (the "LLC"), a North Carolina Limited Liability Company that Messers Moser, Carl A. Boggs, Jr. ("Boggs Jr.") (now deceased), and L. Tyson formed in 1995. (Am. Compl. ¶¶ 44-45.)

{18} On February 20, 2006, the ownership interest in the LLC was as follows: Mr. Moser (1/3), L. Tyson (1/3) and KLJ (1/3). Boggs, Jr. had previously transferred his 1/3 interest to KLJ. (Am. Compl. ¶ 47.)

{19} The LLC had entered into a loan agreement with United Carolina Bank ("UCB"), and subsequently with UCB's successor Branch Banking and Trust Company ("BB&T"), valued at approximately $2.9 million. (Am. Compl. ¶¶ 163-67.)

{20} The loan was secured by real property owned by the LLC, and Messrs. Moser, Boggs, Jr., and L. Tyson had personally and unconditionally guaranteed the obligation of the LLC under the loan agreement. (Am. Compl. ¶ 168.)

{21} The members of the LLC operated pursuant to an operating agreement which provided, in part, that in the event of a member's death, his personal representative would have all the rights of a member for purposes of settling or managing the decedent's estate. (Am. Compl. ¶ 108.) Accordingly, as co-executors, Defendants had the same rights and privileges as did Mr. Moser for purposes of settling or managing the Moser estate. (Am. Compl. ¶ 109.)

{22} Between early 2006 and late 2007, the Moser estate was embroiled in a number of legal challenges brought by Sharon Moser and Mineral Springs United Methodist Church that resulted in settlement agreements that did not include Plaintiffs. (Am. Compl. ¶¶ 64-89.)

{23}    On November 29, 2007, Defendants filed with the Union County Clerk of Court a final accounting in the Moser estate that reflected a current asset valuation of $10,659,067.88. (Am. Compl. ¶ 93.)

{24}    On December 6, 2007, Defendants filed with the Union County Clerk of Court their written resignations as co-executors of Mr. Moser's estate and as trustees of the Trust, effective December 3, 2007.  After filing their resignations, neither Defendant took any further action on behalf of the estate or the trust.  No hearing was held on Defendants' resignations, nor was there ever court approval of the resignations.  (Am. Compl. ¶¶ 89-91.)

{25}    On February 28, 2009, the BB&T loan matured and was due and payable. (Am. Compl. ¶ 172.)  BB&T made demand for payment upon the proper parties, but the loan went into default.  As a result, on July 7, 2009, the LLC property was sold at a properly noticed foreclosure sale to Tournament Drive Investors, LLC ("Tournament Drive") for $1,900,000.00.  Tournament Drive's members were Defendant Carl A. Boggs, III, son of Boggs Jr., and Defendant C. Mark Tyson, son of L. Tyson. (Am. Compl. ¶¶ 196-97.)

{26}    The sale to Tournament Drive resulted in a loan deficiency of $411,926.46 due to BB&T.  (Am. Compl. ¶ 205.)

{27}    Plaintiffs allege that Boggs, Jr., L. Tyson and KLJ engaged in activities and conduct injurious to their interest in the residuary of the Moser estate, in part, by setting up Tournament Drive to purchase the LLC's assets at foreclosure for less than fair market value, thereby depriving Plaintiffs of their equitable interest in the LLC.  (Am. Compl. ¶¶ 238-39.)

{28}    During the time between Defendants' attempted resignations and the loan default, pursuant to the terms of the Trust Agreement, Plaintiffs as well as Sharon Ball Moser were authorized to appoint a successor trustee if Defendants ceased to act in their capacity as trustees. (Am. Compl. ¶¶ 96, 100.)  Neither Plaintiffs nor Ms. Moser appointed a successor trustee until September 21, 2010, when by agreement, Plaintiffs appointed Justin Todd Wortman as successor

Trustee. (Am. Compl. ¶ 101.) Mr. Wortman is currently the sole residuary beneficiary of the Dan Moser Estate. (Am. Compl. ¶ 104.)

{29} On December 6, 2007, Defendant Glover submitted an Application for Letters Administration C.T.A. in connection with the Moser Estate and was granted Letters of Administration C.T.A. the same day. (Am. Compl. ¶¶ 113, 116.)

{30} Plaintiffs allege that Defendants were fiduciaries of the Moser estate, the Trust, and Plaintiffs. Further, Plaintiffs assert that because of this fiduciary relationship, Defendants breached their duties leading up to the foreclosure by failing to affirmatively engage or participate in the management of the LLC, or to review the acts and omissions of the surviving LLC members, resulting in damages to Plaintiffs. (Am. Compl. ¶¶ 229, 248-49.)

{31} All of Plaintiffs' allegations regarding breach of fiduciary duties by Defendants reference acts of negligence or culpable omission that occurred after the date Defendants filed written notice of resignation as co-executors of the Moser estate and trustees of the Trust. (Am. Compl. ¶¶ 227-36.)

{32} Defendants contend that neither the Original nor Amended Complaint alleges any acts or omissions by Defendants giving rise to any cause of action that occurred within three years prior to the filing of the Original Complaint on December 2, 2010. Accordingly, Defendants argue that Plaintiffs fail to state a claim upon which relief can be granted because Plaintiffs' claims are barred by the applicable three-year statute of limitations. (Defs.' Supplemental Joint Mot. to Dismiss 1-2.)

III.

STANDARD OF REVIEW

{33} The question for the court on a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979)). "[T]he pleadings, when taken as true, [must be] legally sufficient to satisfy

the elements of at least some legally recognized claim." *Arroyo v. Scottie's Prof'l Window Cleaning, Inc.*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995) (citing *Harris v. NCBC Nat'l Bank*, 85 N.C. App. 669, 355 S.E.2d 838 (1987)).

{34}    "'Dismissal of a complaint is proper under the provisions of Rule 12(b)(6) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim.'" *Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) (quoting *Hooper v. Liberty Mut. Ins. Co.*, 84 N.C. App. 549, 551, 353 S.E.2d 248, 250 (1987)).  A motion to dismiss "is an appropriate method of determining whether the statutes of limitation bar plaintiff's claims if the bar is disclosed in the complaint." *Id.* (citing *Horton v. Carolina Medicorp*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996)).

{35}    In considering a motion to dismiss for failure to state a claim upon which relief can be granted, "'the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted.'" *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 613, 646 S.E.2d 826, 837 (2007) (quoting *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).

IV.

ANALYSIS

{36}    "Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action."  N.C. Gen. Stat. § 1-15(c) (2011). "When the cause of action accrues, the three-year period under the applicable statute of limitations . . . begins to run." *Nationwide Mut. Ins. Co. v. Winslow*, 95 N.C. App. 413, 415, 382 S.E.2d 872, 873 (1989) (stating that the statute of limitations for legal malpractice is three years); *see also Carlisle v. Keith*, 169 N.C. App. at 682-83, 614 S.E.2d at 548 (2005) (holding that breach of fiduciary duty is a species of negligence or professional malpractice); *see also Harrold v. Dowd*, 149 N.C. App. 777, 781, 561 S.E.2d 914, 917 (2002) (holding in a case against an

accountant that the statute of limitations for professional malpractice and negligence is three years). As discussed above, Plaintiffs' claim for breach of fiduciary duty is based on acts of negligence or culpable omission that occurred after Defendants filed written notice of resignation. Therefore, a threshold question that must be answered before the Court can resolve Defendants' statute of limitations argument is at what point did Defendants' duties and obligations as fiduciaries of the Moser estate and/or the Trust end?

{37} Determining whether Defendants' written resignations were effective is a question of law for the Court.

{38} Chapter 36C, Article 7 of the North Carolina General Statutes sets out a series of default rules dealing with the office of trustee. These rules detail the procedures for accepting the duties of trusteeship imposed either by statute or by the trust instrument, filling a vacancy when it occurs, the procedure for resignation, and the process for appointing a successor.

{39} Accepting or declining the duties of a trustee is governed by Section 36C-7-701 of the North Carolina General Statutes. A trustee may accept the duties of his office by "exercising powers or performing duties as trustee, or otherwise indicating acceptance of the trusteeship." N.C. Gen. Stat. § 36C-7-701(a)(2) (2011). Plaintiffs have alleged that Defendants accepted the duties of their office. Having accepted the duties of office, the only way Hutaff and Moyer could be relieved of those duties is by removal or resignation pursuant to the exclusive provisions of Section 36C-7-705.

{40} A trustee may resign "(1) [u]pon at least 30 days' notice in writing to the *qualified beneficiaries*, the settler, if living, and all co-trustees; or (2) [w]ith the approval of the court." N.C. Gen. Stat. § 36C-7-705(a)(1-2) (2011) (emphasis added). By the enactment of this section, the Legislature went further than the Restatement of Trusts which allows a trustee to resign with the consent of the beneficiaries, and rejected the Common Law rule that allowed a trustee to resign only with the permission of the court. Official Comment to N.C. Gen. Stat. § 36C-7-705. Irrespective of the funding status of a trust, no other manner of resignation

has ever been approved by our courts.  As such, this Court does not undertake to carve out an exception to the method of resignation set out in Section 36C-7-705 based upon whether a trust is funded or unfunded at the time resignation is sought; and concludes as a matter of law that Section 36C-7-705 provides the exclusive method by which a trustee may resign the duties of his office.

{41}    "The clerks of superior court of this State have original jurisdiction over all proceedings concerning the internal affairs of trusts. . . . These include proceedings . . . [t]o approve the resignation of a trustee."  N.C. Gen. Stat. § 36C-2-203(a)(2) (2011).

{42}    A qualified beneficiary is defined as:

> A living beneficiary to whom, on the date the beneficiary's qualification is determined, any of the following apply: a. [i]s a distributee or permissible distributee of trust income or principal[;] b. [w]ould be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in sub-subdivision a. of this subdivision terminated on that date without causing the trust to terminate[; or] c. [w]ould be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

N.C. Gen. Stat. § 36C-1-103(15)(a-c) (2011).

{43}    The term "qualified beneficiary" was developed "[d]ue to the difficulty of identifying beneficiaries whose interests are remote and contingent, and because such beneficiaries [were] not likely to have much interest in the day-to-day affairs of the trust . . . ."  Official Comment to N.C. Gen. Stat. § 36C-1-103(15)(a-c).  The purpose behind defining a smaller group of beneficiaries was "to limit the class of beneficiaries to whom certain notices must be given or consents received.  The term qualified beneficiaries is used in *Section 705* to define the class to whom notice must be given of a trustee resignation."  *Id.* (emphasis added).

{44}    Even where resignation is properly executed, "[a]ny liability of a resigning trustee or of any sureties on the trustee's bond for acts or omissions of the trustee is not discharged or affected by the trustee's resignation."  N.C. Gen. Stat. § 36C-7-705(c).  In addition, "until the *trust property is delivered* to a successor

trustee or other person entitled to it, a trustee who has resigned or been removed has the duties of a trustee and the powers necessary to protect the trust property." N.C. Gen. Stat. § 36C-7-707(a) (2011) (emphasis added).

{45}    Plaintiffs allege that Defendants' attempt to resign was ineffective and, therefore, Defendants remained in a fiduciary relationship with the Trust after their purported resignations for two reasons:  (1) as of December 3, 2007, Plaintiffs were qualified beneficiaries of the Trust and Defendants failed to comply with the resignation requirements of N.C. Gen. Stat. § 36C-7-705(a)(1); and (2) even if Defendants' resignations were effective, Defendants retained the duties of trustees under N.C. Gen. Stat. § 36C-7-707(a) until a successor trustee was appointed on September 21, 2010. (Pls.' Resp. to Defs.' Joint Supplemental Mot. to Dismiss 2.)

{46}    As to Plaintiffs' first argument, for Plaintiffs to have been qualified beneficiaries on the day of Defendants' attempted resignations, Plaintiffs must have been either: (1) a distributee or permissible distributee (collectively, "distributee") of trust income or principal, (2) a distributee of trust income or principal if the interests of distributees in (1) ended, or (3) a distributee of trust income or principal if the trust terminated.  N.C. Gen. Stat. § 36C-1-103(15)(a-c).  While not explicit, it is axiomatic that for there to be a distributee of trust income or principal, the trust must be funded with income or principal. *See id.*  The Trust in this case is a pour-over trust that, under the terms of the Will, will not be funded until Mr. Moser's residuary estate is finally determined.  (Am. Compl. ¶ 25.)  At the time of Defendants' resignations, as well as the writing of this opinion, the Moser estate had not been settled.  Because the estate has not been settled, the residuary estate could not have been finally determined, and in keeping with the express terms of the Will, no property or income could have poured over from the estate into the Trust.  (Am. Compl. ¶ 111.)  Logically, Plaintiffs could not have been distributees of the unfunded Trust on or before December 3, 2007, and, therefore, were not qualified beneficiaries entitled to 30 days prior notice of Defendants' resignations.

{47}    Moving to Plaintiffs' second argument, Plaintiffs cite N.C. Gen. Stat. § 36C-7-707(a) for the proposition that a resigning trustee retains his duties to a trust

until a successor trustee is appointed. Plaintiffs' interpretation of this section is strained. Section 36C-7-707 addresses the power and duties related to delivery of property by a former trustee to his successor, not the duties of a trustee for an unfunded trust. The official comment to Section 36C-7-707 provides clarification. "Subject to the power of the court to make other arrangements or unless a cotrustee remains in office, a resigning . . . trustee has continuing authority until the trust property is delivered to a successor." Official Comment to N.C. Gen. Stat. § 36C-7-707. The comments go on to cite multiple provisions of the Uniform Trust Code that provide a court or special fiduciary with the power to transfer trust property. *Id.*

{48} Section 36C-7-707 was meant to protect trust property in existence at the time of a trustee's resignation or removal. Neither of the parties in this case argues or contends that on the date of Defendants' attempted resignations, Mr. Moser's estate had been finally settled and the estate residue determined. As a result, the Trust did not contain any property that Section 36C-7-707 was intended to protect. Therefore, Section 36C-7-707 would be inapplicable and Defendants would have no continuing duties to the trust once they had effectively resigned.

{49} While Plaintiffs were not entitled to notification as qualified beneficiaries under Section 36C-7-705(a)(1), this did not excuse Defendants from complying with Section 36C-7-705(a)(2) which makes clear, that in order for a trustee to resign from their position, they must either provide thirty day written notice to the qualified beneficiaries, or obtain "approval of the court." N.C. Gen. Stat. § 36C-7-705(a)(2). Here, Defendants did neither. Because Defendants did not comply with Section 36C's requirements for resignation, their written resignations were not effective.

{50} Having determined that Defendants' resignations were not effective as of December 3, 2007, and that as a result Defendants maintained their duties as trustees after that date, the Court now turns to Defendants' argument that Plaintiffs have failed to properly allege any acts of negligence or breach of fiduciary duty occurring within the three-year statute of limitations.

{51}    In order for Plaintiffs' claims to survive Defendants' Motion to Dismiss, Plaintiffs must have (1) alleged acts occurring within three (3) years prior to the filing of their Complaint, and (2) alleged acts during a time when Defendants owed fiduciary duties to the Trust.  This Action was brought on December 2, 2010, and the LLC property in question was sold at foreclosure on July 7, 2009.  (Pls.' Resp. to Defs.' Joint Mot. to Dismiss 2; Am. Compl. ¶¶ 196-97.)  Plaintiffs allege that Defendants were negligent and breached their fiduciary duty to Plaintiffs by omission when, after they ineffectively resigned, Defendants failed to protect estate-owned property that might have eventually been transferred to the Moser Trust once the estate was settled.  (Am. Compl. ¶¶ 108-10, 229, 231, 236.)  Because Defendants' alleged acts would have occurred after their attempted resignation on December 3, 2007 those acts would be within the three-year statute of limitations and within the time when Defendants owed a duty to the Trust.  Accordingly, Plaintiffs have stated a claim for which relief can be granted.

V.

CONCLUSION

THEREFORE, for the foregoing reasons, Defendants' Motion to Dismiss is DENIED.

IT IS SO ORDERED, this the 30th day of January, 2012.