Wortman v. Hutaff, 2013 NCBC 50.

STATE OF NORTH CAROLINA

UNION COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 4082

JUSTIN TODD WORTMAN, individually and
in his representative capacity as Successor and
Trustee of the Dan L. Moser Trust, dated
November 20, 2000, as subsequently amended,
JUDIE MOSER SHEPARD, CHELSEY SHEA
FELTS and DARBY VON WORTMAN,

        Plaintiffs,

      v.

RICHARD R. HUTAFF, THOMAS M. MOYER,
III, L. CARLTON TYSON, ESTATE OF CARL
A. BOGGS, JR., CARL A. BOGGS, III, C.
MARK TYSON, MILEY W. GLOVER,
individually and in his representative capacity
as Administrator C.T.A. of the ESTATE OF
DAN L. MOSER, KLJ PROPERTIES, LLC,
TOURNAMENT DRIVE INVESTORS, LLC,
and POTTER & COMPANY, P.A.,

        Defendants.

ORDER AND OPINION

*Hedrick Gardner Kincheloe & Garofalo, LLP by Jeremy T. Canipe and Amanda Johnson for Plaintiffs.*

*Alexander Ricks PLLC by Rodney E. Alexander for Defendants Miley W. Glover and Potter & Company, P.A.*

*Caldwell Helder Helms & Robison, P.A. by R. Kenneth Helms, Jr. for Defendants L. Carlton Tyson, the Estate of Carl A. Boggs, Jr., Carl A. Boggs, III, C. Mark Tyson, KLJ Properties, LLC, and Tournament Drive Investors, LLC.*

Murphy, Judge.

{1}    There are three Motions before the Court for resolution:  (i) a Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Motion I") brought by L. Carlton Tyson ("Tyson"), the Estate of Carl A. Boggs, Jr., Carl A. Boggs, III, C. Mark Tyson, KLJ Properties, LLC ("KLJ"), and Tournament

Drive Investors ("TDI") (collectively "Defendants I"); (ii) a Motion to Dismiss pursuant to Rule 12(b)(6) ("Motion II") by Miley W. Glover ("Glover") and Potter & Company, P.A. ("P&C") (collectively "Defendants II"); and (iii) Plaintiffs' Motion for Leave to File Sur-Reply ("Motion III"). Having considered the parties' motions, briefs, and the arguments and contentions of counsel made during a hearing on June 26, 2012, the Court hereby **GRANTS** Motion I, **GRANTS** in part and **DENIES** in part Motion II, and **DENIES** Motion III.

## I.

### PROCEDURAL HISTORY

{2} On December 2, 2010, Plaintiffs filed their original Complaint in Union County Superior Court, naming only Richard R. Hutaff ("Hutaff") and Thomas M. Moyer, III ("Moyer") as defendants. The matter was designated a complex business case on January 6, 2011, and subsequently assigned to this Court.

{3} Plaintiffs filed an Amended Complaint on March 18, 2011, adding as defendants Tyson, the Estate of Carl A. Boggs, Jr., Carl A. Boggs, III, C. Mark Tyson, Glover (both individually and in his representative capacity as Administrator, C.T.A. of the Estate of Dan L. Moser), KLJ, TDI, and P&C.

{4} On March 13, 2012, Defendants II filed Motion II, with supporting brief, and on March 15, 2012, Defendants I filed Motion I, with supporting brief.

{5} Plaintiffs filed Responses to Motions I and II on April 4, 2012. On April 16, 2012, in support of Motion I, Defendants I filed a Reply to Plaintiffs' Response, and on April 17, 2012, in support of Motion II, Defendants II filed a Reply to Plaintiffs' Response and a Reply in support of Motion I.

{6} On April 27, 2012, Plaintiffs filed a Motion for Leave to File Sur-Reply.

{7} The Court conducted a hearing on Defendants' Motions on June 26, 2012.

## II.

### FACTUAL BACKGROUND

{8} Ordinarily, the Court does not make findings of fact in connection with motions to dismiss pursuant to Rule 12(b)(6). *See Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). However, for the

purpose of analyzing Defendants I and II's motions to dismiss pursuant to Rule 12(b)(6), the Court recites those facts included in the pleadings that are relevant to the Court's legal determinations. [1]

{9}     On August 6, 2002, Dan L. Moser ("Moser") executed a Last Will and Testament (the "Will").  Moser died testate in Union County on February 20, 2006. (Am. Compl. ¶¶ 22, 24.)

{10}   The Will provides that, after payment of all taxes and delivery of general bequests, Moser's residuary estate would be paid to Hutaff and Moyer in their capacities as co-trustees of the pour-over Dan L. Moser Trust (the "Trust") and managed for the benefit of the Trust's beneficiaries.  (Am. Compl. ¶ 25.)  In addition to Plaintiffs, the Trust's beneficiaries are Sharon Moser (Moser's widow), Lawrence P. Moser, Sr., and Mineral Springs United Methodist Church.  (Am. Compl. ¶ 32.) The terms of the Trust provide for the appointment of a successor trustee in the event Hutaff and Moyer cease to act as Trustees.  (Am. Compl. ¶ 96; Defs.' Br. Supp. Mot. II Ex. 2.)  Specifically, the Trust states that,

> If all the Settlor's individual successor Trustees should fail to qualify as Trustee . . . or for any reason should cease to act in such capacity, then the successor or substitute Trustee who shall also serve without bond shall be appointed by the following persons in the order named: [Sharon Moser and if she] is not living and competent, a majority of the beneficiaries . . . to whom the trust property could then be distributed . . . .

(Defs.' Br. Supp. Mot. II Ex. 2).

{11}   One of the Moser Estate's (the "Estate") largest assets was Moser's interest in Carolina Golf Developers, LLC ("CGD"), a North Carolina limited liability company that Moser, Carl A. Boggs, Jr. ("Boggs") (now deceased), and Tyson formed

---

[1] When conducting a 12(b)(6) inquiry, the court may consider documents that are the subject of the action and specifically referenced in the complaint. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).  In the Complaint, Plaintiffs refer to the "Will" (Am. Compl. ¶ 24), the "Trust" (Am. Compl. ¶ 25), the "Operating Agreement" (Am. Compl. ¶ 107), the "Agreement for Sale of Membership Interest" (Am. Compl. ¶ 214) and various documents and proceedings before the Union County Clerk of Court (Am. Compl. ¶ 150, 217–220).  The Court, therefore, considers these documents, attached to Motion II, in reaching its determinations. (Defs.' Br. Supp. Mot. II Ex. 1–10.)

in 1995.  (Am. Compl. ¶¶ 44—45.)  Under the Will, Moser's interest in CGD became part of the residuary estate and passed to the Trust.  (Defs.' Br. Supp. Mot. II Ex. 2.)

{12}   As of February 20, 2006, Moser, Tyson, and KLJ each owned a 1/3 interest in CGD.  Boggs had previously transferred his 1/3 interest to KLJ.  (Am. Compl. ¶¶ 46—47.)

{13}   Under the Trust, Plaintiffs were to receive all of Moser's interest in CGD. (Am. Compl. ¶ 49; Defs.' Br. Supp. Mot. II Ex. 2.)

{14}   On March 6, 2002, CGD entered into a loan agreement with United Carolina Bank ("UCB"), and subsequently with UCB's successor, Branch Banking and Trust Company ("BB&T"), valued at approximately $2.9 million.  CGD was the primary obligor on the loan that was secured by real property owned by CGD. Moser, Boggs, and Tyson personally and unconditionally guaranteed CGD's obligation under the loan agreement.  (Am. Compl. ¶¶ 163–168.)

{15}   The Members of CGD operated pursuant to an operating agreement (the "Operating Agreement") wherein the members were also the managers of the company.  (Defs.' Br. Supp. Mot. II Ex. 3 § 5.1.)  Under Section 8.8 of the Operating Agreement,

> [I]n the event of the death, or occurrence of an Event of Bankruptcy as to, or legal incompetency or dissolution of any Member, his or its personal representative or the trustee or receiver of his estate, after being duly appointed and having qualified, shall have all of the rights of a Member for the purpose of settling or managing his estate.

(Am. Compl. ¶ 108; Defs.' Br. Supp. Mot. II Ex. 3 § 8.8.)

{16}   On December 6, 2007, Hutaff and Moyer filed with the Union County Clerk of Court their purported written resignation as co-executors of the Estate and as Trustees of the Trust, effective December 3, 2007.  Thereafter, neither took any further action on behalf of the Estate or the Trust.  However, neither Hutaff nor Moyer gave notice of their intent to resign, or their actual resignation, to Plaintiffs,

nor did any court ever conduct a hearing on, or approve, their resignations. (Am. Compl. ¶¶ 89—92.)[2]

{17} In December 2007, Sharon Moser executed a Renunciation of Right to Qualify for Letters Testamentary or Letters of Administration in the Estate and nominated Glover as Administrator C.T.A. (Am. Compl. ¶ 111.) On December 6, 2007, Glover submitted an Application for, and was granted, Letters of Administration C.T.A. for the Estate. (Am. Compl. ¶¶ 113, 116.)

{18} Glover is a certified public accountant and, as a partner or shareholder in P&C, provided professional services to the Estate on behalf of P&C. (Am. Compl. ¶¶ 112, 125.)[3] Plaintiffs allege that "in connection with the services he provided to the Estate, Glover has acted with express or implied authority conferred upon him by [P&C]." (Am. Compl. ¶ 128.)

{19} Plaintiffs further allege that Glover, as Administrator of the Estate: (i) transferred the Estate's interest in Dan Moser Company, Inc. ("DMC") and DMC Rentals, Inc. ("DMCR") to Sharon Moser, and (ii) made several commitments of Estate assets, including cash distributions, to support the continued operation of DMC. Before making the commitments, Glover petitioned and moved the Union County Clerk of Court for approval of his actions. Following evidentiary hearings on each petition and motion, the Clerk authorized each of Glover's requests. (Am. Compl. ¶¶ 129—148, 150; Defs.' Br. Supp. Mot. II Ex. 7.1—7.8.) Glover maintained that the commitments were in the best interest of the Estate. (Defs.' Br. Supp. Mot. II Ex. 7.1, 7.3, 7.5, 7.7.) After each hearing, the Clerk made findings of fact and concluded as a matter of law that each transaction was "in the best interest of the Estate . . . and the heirs and creditors of the Estate." (Defs.' Br. Supp. Mot. II Ex. 7.2, 7.4, 7.6, 7.8.)

---

[2] In its January 30, 2012 Order, this Court concluded that Hutaff and Moyer's resignation as co-trustees of the Trust was not effective, and, as a result, they retained their duties as co-trustees. Wortman v. Hutaff, 2012 NCBC 9 ¶ 50 (N.C. Super. Ct. Jan 30, 2012), http://www.ncbusinesscourt.net/opinions/2012_NCBC_9.pdf (denying motion to dismiss predicated on statute of limitations).

[3] All of Plaintiffs' claims against P&C are based on Glover's conduct as Estate Administrator while in the course and scope of his employment with P&C.

{20}   On or about June 24, 2008, Boggs and Tyson demanded that Glover, as Administrator of the Estate, make a capital contribution of $50,000.00 to CGD no later than July 15, 2008. (Am. Compl. ¶ 118.) Glover refused the demand. (Am. Compl. ¶ 120.)

{21}   The BB&T loan matured on February 28, 2009, and became due and payable. (Am. Compl. ¶¶ 172, 174, 176.) BB&T made demand for payment upon the proper parties, but the loan went into default. (Am. Compl. ¶¶ 174–76.) As a consequence, BB&T foreclosed on the loan security, which included property owned by CGD. (Am. Compl. ¶¶ 173, 177.) Glover and certain of the Plaintiffs attended the foreclosure hearing before the Union County Clerk of Court, and on July 7, 2009, CGD's property was sold to Defendant TDI for $1,900,000.00 at a properly noticed foreclosure sale. (Am. Compl. ¶¶ 178, 196–97.)

{22}   At the time of the foreclosure sale, TDI's members were Defendant Carl A. Boggs, III (son of Boggs) and Defendant C. Mark Tyson (son of Tyson). (Am. Compl. ¶ 197.) According to Plaintiffs, Glover, Hutaff, and Moyer made no effort to defend CGD in the foreclosure proceeding, and the sale resulted in a loan deficiency of $411,926.46 due to BB&T. (Am. Compl. ¶¶ 179, 205.)

{23}   Plaintiffs allege that Boggs, Tyson, and KLJ engaged in activities and conduct injurious to their interest in the Estate by setting up TDI to purchase CGD's assets at foreclosure for less than fair market value, thereby depriving Plaintiffs of their equitable interest in CGD. (Am. Compl. ¶¶ 238—39.) Specifically, Plaintiffs contend that Boggs and Tyson helped their sons, Carl A. Boggs III and C. Mark Tyson, obtain financing to purchase CGD's assets at the foreclosure sale. (Am. Compl. ¶ 192.)

{24}   On or about September 10, 2009, Glover as Estate Administrator, Boggs and Tyson individually, and Boggs on behalf of CGD, agreed to and executed an Agreement for Sale of Membership Interest whereby Glover agreed to forgive any outstanding loans or capital contributions from Moser to CGD in exchange for Boggs and Tyson assuming the Estate's 1/3 liability for the BB&T deficiency. (Am.

Compl. ¶ 214.)  Moser's loans and capital contributions to CGD totaled approximately $745,130.00.  (Am. Compl. ¶ 209.)

{25}  On September 23, 2009, Glover submitted the Petition for Order of Sale of Interest in Carolina Golf Developers, LLC (the "Sale Petition") to the Union County Clerk of Court, seeking an order granting judicial approval of the Agreement for Sale of Membership Interest.  (Am. Compl. ¶ 217; Defs.' Br. Supp. Mot. II Ex. 9.1.)  In the Sale Petition, Glover alleged that "[i]t is in the best interest of the Estate that [he] be allowed to sell the Estate's interest in CGD to [Boggs and Tyson], at private sale, in accordance with the terms of [the Sale Agreement]."  (Defs.' Br. Supp. Mot. II Ex. 9.1.)

{26}  At a properly noticed hearing before the Union County Clerk of Court on October 13, 2009 (Defs.' Br. Supp. Mot. II Ex. 9.2, 9.4), Glover argued that the Estate's membership interest in CGD had no value.  (Am. Compl. ¶ 218; Defs.' Br. Supp. Mot. II Ex. 9.3.)

{27}  Following the hearing, the Clerk issued an order approving conveyance of the Estate's membership interest in CGD to Boggs and Tyson (Am. Compl. ¶ 220; Defs.' Br. Supp. Mot. II Ex. 9.4), and made the following findings of fact in the Sale Order:  (i) "[t]he liabilities of CGD exceed the remaining assets of CGD by a substantial amount;" (ii) "[t]he [1/3] interest in CGD that is owned by the [Estate] has no value;" and (iii) "it is in the best interest of the Estate and the heirs and creditors of the Estate that [Glover] be allowed to sell the Estate's interest in CGD to [Boggs and Tyson], at private sale."  (Defs.' Br. Supp. Mot. II Ex. 9.4.)

{28}  On September 21, 2010, Plaintiffs undertook to appoint Justin Todd Wortman ("Wortman") as successor trustee. (Am. Compl. ¶¶ 101.)

III.

LEGAL STANDARD

{29}  The question for the court on a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not."  *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838,

840 (1987) (citing *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979)). "[T]he pleadings, when taken as true, [must be] legally sufficient to satisfy the elements of at least some legally recognized claim." *Arroyo v. Scottie's Prof'l Window Cleaning, Inc.*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995) (citing *Harris*, 85 N.C. App. at 670, 355 S.E.2d at 840).

{30}   "Dismissal of a complaint is proper under the provisions of Rule 12(b)(6) . . . when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) (quoting *Hooper v. Liberty Mut. Ins. Co.*, 84 N.C. App. 549, 551, 353 S.E.2d 248, 250 (1987)) (internal quotation marks omitted).  In considering a motion to dismiss for failure to state a claim upon which relief can be granted, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970) (citation omitted) (internal quotation marks omitted).

IV.

ANALYSIS

{31}   In Motions I and II, Defendants I and II move to dismiss all of Plaintiffs' claims asserted against them.  Some of the claims addressed in Motion I are also addressed in Motion II.  Given this overlap, the Court will consider Motions I and II together.

A.

STANDING

{32}   Standing refers to "whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation[s] of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 642, 669 S.E.2d 279, 282 (2008) (quoting *Stanley v. Dep't of Conservation & Dev.*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973)) (internal quotation marks omitted).  "A party has standing to initiate a lawsuit if he is a 'real party in interest.'" *Slaughter v. Swicegood*, 162 N.C. App.

457, 463, 591 S.E.2d 577, 582 (2004) (citing *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000)). "A real party in interest is 'a party who is benefited or injured by the judgment in the case' [and] who by substantive law has the legal right to enforce the claim in question." *Carolina First Nat'l Bank v. Douglas Gallery of Homes*, 68 N.C. App. 246, 249, 314 S.E.2d 801, 803 (1984) (quoting *Reliance Ins. Co. v. Walker*, 33 N.C. App. 15, 18, 234 S.E.2d 206, 209 (1977)) (internal quotation marks omitted) (alteration in original). "Standing most often turns on whether the party has alleged 'injury in fact' in light of the applicable statutes or caselaw [sic]." *Neuse River Found. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002) (citations omitted).

{33} First, Defendants II argue that Wortman does not have standing in this lawsuit as successor trustee because Wortman has never been Trustee of the Trust. Second, Defendants II argue that Plaintiffs do not have standing to maintain the majority of the claims in this lawsuit because, as beneficiaries of the Trust, Plaintiffs cannot demonstrate any injury to themselves that is capable of redress by judgment. And third, Defendants II argue that Plaintiffs cannot establish the actual damage required to sustain a claim for breach of fiduciary duty based on Glover's payment of administrative fees, distributions to Sharon Moser, DMC and DMCR, abandonment of the Estate's interest in the Moser Loans, and omission of the Trust as the residuary beneficiary of the Estate.[4]

1.

WORTMAN AS TRUSTEE OF THE TRUST

{34} When there has been alleged injury to trust property the right to bring an action ordinarily "vests in the trustee as a representative." *Slaughter*, 162 N.C.

---

[4] Defendants I argue that Plaintiffs cannot maintain a claim for breach of fiduciary duty by Boggs and Tyson resulting from the foreclosure sale of CGD's assets because they cannot establish actual damage. (Defs.' Br. Supp. Mot. I 12–13.) Because the Court concludes that Boggs and Tyson owed no fiduciary duty to CGD or Plaintiffs, the Court does not address this argument by Defendants I. Also, Defendants I argue that any claims for breach of fiduciary duty belong to Glover as Estate Administrator. (Defs.' Br. Supp. Mot. I 8.) For the same reason previously stated, the Court does not address this argument by Defendants I.

App. at 464, 591 S.E.2d at 582.  The court, in *Slaughter*, explained that when property is placed into a trust, "the grantor's legal title to that property passes to the trustee" and the trustee assumes the legal right to maintain a cause of action arising from wrongful conduct that inures to the detriment of the trust.  *Id.*

{35}   Here, Plaintiffs allege that they properly appointed Wortman as successor trustee of the Trust and, therefore, he is a proper party to bring this action.  However, by the express terms of the Trust, if Hutaff and Moyer ceased to act as Trustees, Sharon Moser had the exclusive right to appoint a successor trustee during her lifetime, so long as she was competent.  (Defs.' Br. Supp. Mot. II Ex. 2.)  Only if Sharon Moser "is not living and competent" would "a majority of the beneficiaries . . . to whom the trust property could then be distributed" be authorized to appoint a successor trustee (Defs.' Br. Supp. Mot. II Ex. 2.)

{36}   At the time Plaintiffs purportedly appointed Wortman as successor trustee, Sharon Moser was alive and Plaintiffs have failed to allege that she was incompetent.  Rather, Plaintiffs merely contend that she declined to appoint a successor.  (Am. Compl. ¶ 98.)  Accordingly, Plaintiffs' appointment of Wortman as successor trustee did not comport with the terms of the Trust.  The Court concludes, therefore, that Wortman has never been properly authorized to serve as Trustee of the Trust and, accordingly, has no standing herein as successor trustee.

{37}   The Court, therefore, **GRANTS** Motion II as to Wortman's claims in his representative capacity as successor trustee of the Dan L. Moser Trust and **DISMISSES** those claims with prejudice.

2.

PLAINTIFFS CANNOT DEMONSTRATE AN INJURY CAPABLE OF REDRESS BY JUDGMENT

{38}   Although Plaintiffs are beneficiaries under the Trust, they have no interest in any Estate or Trust assets other than the Estate's membership interest in CGD.  (Defs.' Br. Supp. Mot. II Ex. 1–2.)  Therefore, Plaintiffs lack standing to bring any

claims based on an entitlement to any Estate or Trust assets other than the Estate's membership interest in CGD.[5]

{39} However, Defendants II mischaracterize Plaintiffs' claims in regard to the distribution of those other assets. Plaintiffs reference Glover's decisions in distributing other Estate assets to Sharon Moser to show that he preferred one beneficiary over the others. They do not claim any right or entitlement to those assets, rather, Plaintiffs argue that Glover failed to protect their interest in CGD while simultaneously protecting Sharon Moser's interest. Plaintiffs rely on Glover's distribution of those assets and certain other inactions to support their claim that Glover did not manage the Estate's interest in CGD for the benefit of Plaintiffs, and not as support for individual claims arising from an entitlement to those assets. As such, Defendants II's argument that Plaintiffs lack standing to bring most of the claims in the Amended Complaint is unavailing.

{40} Therefore, the Court **DENIES** Motion II as it relates to Defendants II's assertions that Plaintiffs lack standing to assert most of the claims in the Amended Complaint.

3.

PLAINTIFFS CANNOT ESTABLISH ACTUAL DAMAGES

{41} To maintain a claim for breach of fiduciary duty, Plaintiffs must have sustained some actual damage. *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 589–90, 581 S.E.2d 68, 76 (2003) (citations omitted). "[A]ctual damage [means] some actual loss, hurt or harm resulting from the illegal invasion of a legal right." *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474–75 (1991) (citation omitted).

{42} Defendants II argue that "Plaintiffs' claims for breach of fiduciary duty premised on Glover's payment of administrative fees, distributions to Sharon Moser, DMC and DMCR, abandonment of the Estate's interest in the Moser loans

---

[5] Such assets include cash used to pay administrative fees, DMC and DMCR stock, and abandonment of the Estate's interest in the loans Moser made to CGD. (Am. Compl. ¶ 366.)

and Glover's omission of the Trust as the residuary beneficiary of the Estate must be dismissed because [P]laintiffs cannot establish actual damage[]." (Defs.' Br. Supp. Mot. II 11.) In support of their argument, Defendants II rely principally on their position that Plaintiffs were not entitled to receive any Estate assets other than an interest in CGD. As previously noted, Plaintiffs allege only that Glover did not manage the Estate or CGD in a manner that would protect them, thereby causing them to lose their interest in CGD. Plaintiffs do not allege that they were entitled to any distribution of Estate assets other than the Estate's interest in CGD. Accordingly, Defendants II's argument that Plaintiffs cannot establish actual damage for breach of fiduciary duty premised on Glover's aforementioned actions is misguided.

{43} For this reason, the Court **DENIES** Motion II as it pertains to Defendants II's claims that Plaintiffs cannot establish actual damage.

B.

BREACH OF FIDUCIARY DUTY

{44} "To state a claim for breach of fiduciary duty, a plaintiff must allege that a fiduciary relationship existed and that the fiduciary failed to 'act in good faith and with due regard to [plaintiff's] interests[.]'" *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 70, 614 S.E.2d 328, 337 (2005) (quoting *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004) (internal quotation marks omitted) (alteration in original). Our Supreme Court defined a fiduciary relationship as:

> one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . [and] it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.

*Dalton v. Camp*, 353 N.C. 647, 651–52, 548 S.E.2d 704, 707—08 (2001) (citation omitted) (internal quotation marks omitted) (alteration in original).

{45} Plaintiffs argue that Boggs and Tyson, in their individual capacities, owed fiduciary duties to Plaintiffs based on Boggs and Tyson's role as managing members

of CGD, and their majority interest in CGD. In addition, Plaintiffs argue that Glover owed fiduciary duties to Plaintiffs in his role as Administrator of the Estate.

1.

## BOGGS AND TYSON AS MANAGERS OF CGD

{46} Pursuant to the North Carolina Limited Liability Company Act (the "LLC Act"), a manager of a limited liability company "shall discharge his duties as manager in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances, and in the manner the manager reasonably believes to be in the best interests of the limited liability company." N.C. GEN. STAT. § 57C-3-22(b) (2013). However, managers owe these fiduciary duties to the company, not to the individual members. *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 474, 675 S.E.2d 133, 137 (2009). The court, in *Kaplan*, compared managers of limited liability companies to directors of corporations in that "where it is alleged that directors have breached [their] duty [as directors], the action is properly maintained *by the corporation* rather than any individual creditor or stockholder." *Id.* (quoting *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 248, 567 S.E.2d 781, 786–87 (2002)) (emphasis in original).

{47} Here, Boggs and Tyson owed no individual fiduciary duties to the members of CGD, and therefore, owe no duties to Plaintiffs as beneficiaries of the Trust's property interest in CGD. If Boggs and Tyson owed any fiduciary duties, they were due solely to CGD. Plaintiffs have alleged no distinct factual circumstances that might give rise to a special confidence reposed in Boggs and Tyson as managers. Therefore, the Court concludes that Boggs and Tyson, in their roles as managers of CGD, owe no fiduciary duties to Plaintiffs.

2.

## BOGGS AND TYSON'S MAJORITY INTEREST IN CGD

{48} Under the LLC Act, "[m]embers of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company." *Kaplan*, 196 N.C. App. at 473, 675 S.E.2d at 137 (citation omitted). "An exception to this rule is that a controlling shareholder owes a

fiduciary duty to minority shareholders." *Id.* In *Kaplan*, the court determined that the plaintiff's 41.5% ownership interest made him a minority shareholder, and, therefore, he owed no fiduciary duty to the other members of the limited liability company. *Id.*

{49}   Here, Boggs and Tyson each own a 33.33% interest in CGD. Neither owns a majority interest (more than 50%) in the company, and neither could individually control CGD. Boggs and Tyson did not owe Plaintiffs fiduciary duties simply because together they owned a majority interest in CGD and could out-vote Plaintiffs. As minority members of CGD, neither Boggs nor Tyson individually owed any fiduciary duty to any other member(s) of CGD.

{50}   The Court concludes that Plaintiffs have failed to adequately allege the existence of a fiduciary duty, an essential element of their claim for breach of fiduciary duty against Boggs and Tyson. The Court, therefore, **GRANTS** Motion I as to this claim and **DISMISSES** with prejudice Plaintiffs' claims for breach of fiduciary duty against Boggs and Tyson.

3.

GLOVER'S ROLE AS ADMINISTRATOR OF THE ESTATE

{51}   "A personal representative is a fiduciary who . . . is under a general duty to settle the estate of the personal representative's decedent as expeditiously and with as little sacrifice of value as is reasonable under all of the circumstances." N.C. GEN. STAT. § 28A-13-2 (2013). In addition, a personal representative shall act "for the best interests of all persons interested in the estate, and with due regard for their respective rights." *Id.* "[A]n administrator is not an insurer of the assets committed to his care in the settlement of his decedent's estate." *Poindexter v. First Nat'l Bank*, 244 N.C. 191, 194, 92 S.E.2d 773, 775 (1956). "In the ordinary course of the administration all that is required of him is that he act in good faith and with such care, foresight and diligence as an ordinarily sensible and prudent man would act with his own property under like circumstances." *Id.* (citations omitted). Plaintiffs allege that Glover had the right, and therefore the duty, to participate in

the management of CGD to preserve its value, and his failure to do so resulted in a breach of fiduciary duty owed to Plaintiffs as persons interested in the Estate.

{52}   Here, the Operating Agreement grants a member's personal representative all rights of a member for the purpose of settling or managing the Estate. (Defs.' Br. Supp. Mot. II Ex. 3 § 8.8.) All members of CGD have the right to manage the company. (Am. Compl. ¶ 107; Defs.' Br. Supp. Mot. II Ex. 3 § 5.1.) Specifically, section 8.8 of the Operating Agreement states that a Member's personal representative may assume all of the Member's rights in CGD "after being duly appointed and having qualified." (Am. Compl. ¶ 108; Defs.' Br. Supp. Mot. II Ex. 3 § 8.8.) It is undisputed that Glover was appointed and qualified as Administrator of the Estate in 2007. (Am. Compl. ¶¶ 113, 116.) By its terms, the Operating Agreement confers all of the rights of a Member upon Glover, including the right to participate in the control and management of CGD as a manager, for the purpose of settling or managing the Estate.[6]

{53}   As a manager, Glover had a duty to exercise his powers in good faith and in the best interest of CGD. N.C. GEN. STAT. § 57C-3-22(b); Defs.' Br. Supp. Mot. II Ex. 3. Plaintiffs allege that Glover specifically elected to use Estate assets to support the continued operation of DMC, yet refused to make any capital contribution to CGD. It is not beyond the realm of reasonableness that Glover could have taken steps as a manager of CGD to preserve the value of the Estate's membership interest in CGD and "defend" against the BB&T foreclosure proceeding.[7] The Operating Agreement confers on each manager the power to "defend any actions or proceedings relating to" CGD and contains no requirement of a majority vote to do so. (Defs.' Br. Supp. Mot. II Ex. 3 § 5.1.) Moreover,

---

[6] The Court acknowledges that there are other provisions of the Operating Agreement pertaining to the death of a Member that could be interpreted in a way contrary to this conclusion. However, at this stage of the case, there is sufficient evidence to support Plaintiffs' allegations and allow the claim to go forward.

[7] Glover made cash distributions from the Estate to Sharon Moser to support the operations of DMC and DMCR, yet refused to make capital contributions to support the operations of CGD. (Am. Compl. ¶¶ 118, 120, 147–49.) Furthermore, Glover attended the BB&T foreclosure hearing, yet did not offer any defenses. (Am. Compl. ¶ 178–79.)

Defendants II's reliance on *Crouse v. Mineo*, 189 N.C. App. 232, 658 S.E.2d 33 (2008), for the proposition that Glover could not take these actions as a minority member, is misplaced. The absence of an operating agreement between the parties in *Crouse* prompted the court to look to the LLC Act for guidance. In this case, however, the Operating Agreement explicitly confers upon each Member the authority to defend CGD against any actions or proceedings. *Id.* at 237, 658 S.E.2d at 36 (2008). The provisions of a written operating agreement must be followed where one exists. *Id.* Therefore, Glover's ability to exercise management rights regarding CGD must be considered in terms of the Operating Agreement.

{54} At this stage of the proceedings, the Court is of the opinion that Plaintiffs' allegations meet the minimal pleading standards of Rule 12(b)(6) and are sufficient to state a claim for breach of fiduciary duty based on Glover's failure to participate in the management of CGD and to preserve its value. The Court, therefore, **DENIES** Motion II as to the claim for breach of fiduciary duty predicated on Glover's failure to participate in the management of CGD, including failing to defend the BB&T foreclosure proceeding, failing to affirmatively engage and participate in the management of CGD, or failing to review the acts or omissions of the surviving CGD Members.

C.

COLLATERAL ESTOPPEL

{55} Collateral estoppel "prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986).

> To bar Plaintiffs' claims under collateral estoppel:

> (1) the issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.

*McCallum v. N.C. Coop. Extension Serv.*, 142 N.C. App. 48, 54, 542 S.E.2d 227, 233 (2001) (quoting *King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973)). Both Defendants I and II argue that collateral estoppel bars Plaintiffs' claims for breach of fiduciary duty predicated on the conveyance of the Estate's membership interest in CGD to Boggs and Tyson. In addition, Defendants II argue that collateral estoppel bars Plaintiffs' claims for breach of fiduciary duty predicated on showing preferential treatment to Sharon Moser, to Plaintiffs' detriment, by making distributions of Estate assets to Sharon Moser while refusing to make a capital contribution to CGD.

1.

CONVEYANCE OF THE ESTATE'S MEMBERSHIP INTEREST IN CGD TO BOGGS AND TYSON

{56} "The clerk of superior court of each county . . . shall have jurisdiction of the administration, settlement, and distribution of estates of decedents including, but not limited to, estate proceedings as provided in G.S. 28A-2-4." N.C. GEN. STAT. § 28A-2-1 (2013). Therefore, orders of a Clerk entered in estate proceedings within the Clerk's jurisdiction can serve as grounds to invoke collateral estoppel. *See C.C. Mangum, Inc. v. Brown*, 124 N.C. App. 658, 659—61, 478 S.E.2d 245, 246—247 (1996) (affirming trial court's entry of summary judgment on the basis of collateral estoppel premised on Clerk's order regarding foreclosure sale of real property).

{57} In this case, and pursuant to N.C.G.S. § 28A-16-2(b) (2013), Glover sought and obtained a court order granting judicial approval of the Estate's sale of its membership interest in CGD to Boggs and Tyson. Defendants I and II argue that collateral estoppel bars Plaintiffs' claims for breach of fiduciary duty predicated on the conveyance of the Estate's membership interest in CGD to Boggs and Tyson because the issue has already been litigated and decided by the Clerk of Court in its Order Authorizing the Sale of Interest in Carolina Golf Developers, LLC (the "Sale Order"). The Court addresses each element of collateral estoppel as applied to this claim solely with respect to Glover, given the Court's conclusion above that Boggs and Tyson owed no fiduciary duty to Plaintiffs.

{58} First, whether Glover breached a fiduciary duty by entering into the Agreement for Sale of Membership Interest and failing to act with due regard to Plaintiffs' interests is the same issue involved in the prior action before the Clerk of Court. The principal issue raised before the Clerk was whether the sale of the Estate's membership interest in CGD to Boggs and Tyson was in the best interest of the Estate and, therefore, of Plaintiffs. (Defs.' Br. Supp. Mot. II Ex. 9.1.)

{59} Second, the issue of whether Glover breached a fiduciary duty by entering into the Agreement for Sale of Membership Interest was actually litigated at an evidentiary hearing before the Clerk. Plaintiffs received notice of, attended, and participated in the hearing. Plaintiffs were, therefore, afforded a full and fair opportunity to litigate the issue. (Defs.' Br. Supp. Mot. II Ex. 9.2—9.3.) Moreover, although Plaintiffs had the legal right to appeal the Clerk's order, they did not do so.

{60} Third, the issue of whether Glover breached a fiduciary duty by entering into the Agreement for Sale of Membership Interest was material and relevant to the disposition of the prior action. After conducting the evidentiary hearing, the Clerk made the following findings of fact in its Sale Order: (i) "[t]he liabilities of CGD exceed the remaining assets of CGD by a substantial amount;" (ii) "[t]he [1/3] interest in CGD that is owned by the [Estate] has no value;" and (iii) "it is in the best interest of the Estate *and the heirs* and creditors of the Estate that [Glover] be allowed to sell the Estate's interest in CGD to [Boggs and Tyson], at private sale." (Defs.' Br. Supp. Mot. II Ex. 9.4) (emphasis added). The Clerk authorized the sale of the Estate's membership interest in CGD, based in part on a finding that the sale was in the best interest of Plaintiffs as heirs of the Estate. (Defs.' Br. Supp. Mot. II Ex. 9.4.)

{61} Fourth, whether the sale was in the best interest of the Estate was the principal issue decided by the Clerk, and the Clerk's determination of that issue was necessary and essential to approval of the sale. In approving the sale, the Clerk determined that the sale was in the Plaintiffs' best interest, and based its conclusion thereon.

{62}   Plaintiffs argue that collateral estoppel should not apply because the Clerk based his conclusions upon Glover's testimony that the Estate's membership interest in CGD had no value, which Plaintiffs allege was inaccurate because Glover failed to obtain a proper valuation incorporating Moser's capital contributions to CGD.  (Am. Compl. ¶ 219; Pls.' Resp. Mot. I 9.)  The North Carolina Court of Appeals has previously addressed a similar issue.  *See Hillsboro Partners, LLC v. City of Fayetteville*, 738 S.E.2d 819, 825 (N.C. Ct. App. 2013).

{63}   In *Hillsboro Partners*, the plaintiff argued that the defendant's incorrect conclusion that the plaintiff's building was a safety hazard and its failure to consider certain evidence in reaching that conclusion prevented collateral estoppel from applying to its claims.  *Id.*  However, the plaintiff had been given notice of the hearing and could have conducted its own investigation of the matter.  *Id.* at 824–25.  The court concluded that the plaintiff could not use its failure to independently inspect or verify the defendant's representations "to avoid the administrative process put in place by the North Carolina legislature."  *Id.* at 825.

{64}   Any inaccuracy regarding the value of the Estate's membership interest in CGD was considered by the Clerk on the merits and, therefore, is insufficient to counter the application of collateral estoppel.  Also, Plaintiffs were given more than ten days' notice of the Sale Petition hearing, during which time they were at liberty to conduct their own investigation into the value of the Estate's membership interest in CGD and present evidence to the Clerk.  (Defs.' Br. Supp. Mot. II Ex. 9.4.)  Plaintiffs also had the legal right to appeal the Sale Order, but chose not to do so.  Thus, Plaintiffs are bound by the decision of the Clerk.  Therefore, even if the Court were to accept as true Plaintiffs' claim that Glover's testimony was inaccurate, that claim will not prevent the application of collateral estoppel in this case upon the facts before the Court.

{65}   Accordingly, the Court concludes that collateral estoppel bars Plaintiffs' claims for breach of fiduciary duty predicated on the conveyance of the Estate's membership interest in CGD to Boggs and Tyson.  The Court, therefore, **GRANTS**

Motions I and II in favor of Defendants I and II regarding these claims and **DISMISSES** them with prejudice.

2.

PREFERENTIAL TREATMENT OF SHARON MOSER TO PLAINTIFFS' DETRIMENT

{66} "By G.S. 28A-2-1 the clerk is given exclusive original jurisdiction of 'the administration, settlement and distribution of estates of decedents' except in cases where the clerk is disqualified to act." *Matter of Adamee's Estate*, 291 N.C. 386, 398, 230 S.E.2d 541, 549 (1976) (quoting N.C. GEN. STAT. § 28A-2-3 (2013)).

{67} In this case, Glover petitioned and submitted several motions to the Union County Clerk of Court to approve the commitment of Estate assets to support the continued operation of DMC. Defendants II argue that collateral estoppel bars Plaintiffs' claim for breach of fiduciary duty regarding Glover's alleged preferential treatment of Sharon Moser to Plaintiffs' detriment based on these commitments because this issue has already been litigated and decided in the Clerk's orders authorizing the commitment of Estate assets to DMC.[8] The Court addresses each element of collateral estoppel as it applies to this claim.

{68} First, whether Glover breached a fiduciary duty by making the commitments and failing to act with due regard to Plaintiffs' interests is the same issue involved in the prior actions before the Clerk. Glover's petitions and motions filed with the Clerk clearly demonstrate that the principal issue to be decided by the Clerk was whether it was in the best interest of the Estate, and therefore Plaintiffs, to commit Estate assets to DMC. (Defs.' Br. Supp. Mot. II Ex. 7.1, 7.3, 7.5, 7.7.)

{69} Second, whether Glover breached a fiduciary duty by committing Estate assets to DMC was raised in the petitions and motions to the Clerk and was actually litigated in the evidentiary hearings on each petition and motion. Plaintiffs were given sufficient notice of the hearings, actually participated in the

---

[8] Based on the parties' motions, briefs and the exhibits contained therein, it appears that both parties acknowledge that the Estate still possesses the DMC and DMCR stock, so the Court will not consider the disposition of DMC and DMCR stock in its evaluation of Plaintiffs' claim for preferential treatment.

hearings, and enjoyed a full and fair opportunity to litigate this issue.[9] (Defs.' Br. Supp. Mot. II Ex. 7.1, 7.3, 7.5, 7.7.)

{70} Third, this issue was material and relevant to the disposition of the prior action. After conducting evidentiary hearings, the Clerk found as fact and concluded as a matter of law that each transaction was "in the best interest of the Estate of Dan L. Moser, *and the heirs* and creditors of the Estate." (Defs.' Br. Supp. Mot. II Ex. 7.2, 7.4, 7.6, 7.8) (emphasis added). Based on these findings and conclusions, the Clerk authorized Glover to commit Estate assets to DMC.

{71} Fourth, the Clerk's determination that allowing Glover to commit Estate assets to DMC was in the best interest of the Estate and the heirs was necessary and essential to the Clerk's approval of the transactions. Accordingly, whether Glover's commitment of Estate assets to DMC was in Plaintiffs' best interest has already been litigated and determined by the Clerk. Plaintiffs are, therefore, estopped from arguing that the commitment of Estate assets to DMC was to their detriment.

{72} Based on the foregoing, the Court concludes that Plaintiffs are collaterally estopped from bringing a claim for breach of fiduciary duty premised upon alleged preferential treatment of Sharon Moser to Plaintiffs' detriment by committing Estate assets to support the continued operation of DMC. The Court, therefore, **GRANTS** Motion II and **DISMISSES** those claims against Glover and P&C with prejudice.

D.

CIVIL CONSPIRACY

{73} To recover on a claim of civil conspiracy, the plaintiff must show "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Strickland v.*

---

[9] The fact that Plaintiffs did not avail themselves of the opportunity to litigate the issue does not change the Court's conclusion that Plaintiffs had a full and fair opportunity to litigate. *See Hillsboro Partners*, 738 S.E.2d at 826.

*Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (citation omitted) (internal quotation marks omitted).

{74} Plaintiffs allege that (1) Boggs and Tyson conspired to breach their fiduciary duties, to Plaintiffs' detriment, by entering into an agreement with Carl A. Boggs, III, KLJ, and C. Mark Tyson to form TDI; and (2) Boggs, Tyson, and Glover conspired to breach their fiduciary duties, to Plaintiffs' detriment, by entering into the Agreement for Sale of Membership Interest.

1.

AGREEMENT TO FORM TDI

{75} "[T]here is not a separate civil action for civil conspiracy in North Carolina." *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005) (citations omitted). Recovery under a claim of conspiracy must be based on an underlying claim of unlawful conduct. *Id.* "If the underlying acts supporting a claim for conspiracy are dismissed, so too must the claim for conspiracy be dismissed." *NNN Durham Office Portfolio I, LLC v. Highwoods Realty Ltd. P'ship.*, 2013 NCBC 12 ¶ 102 (N.C. Super. Ct. Feb. 19, 2013), http://www.ncbusinesscourt.net/opinions/2013_NCBC_12.pdf (granting motion to dismiss civil conspiracy claim based on fraud, fraud in the inducement, and negligent misrepresentation) (citing *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007)).

{76} Here, Plaintiffs allege that Boggs and Tyson conspired with Carl A. Boggs, III, KLJ, and C. Mark Tyson to breach their fiduciary duties by forming TDI to purchase the property of CGD at foreclosure, thereby depriving Plaintiffs of their beneficial interest in CGD. (Am. Compl. ¶¶ 302, 317.) Because the underlying claim for breach of fiduciary duty against Boggs and Tyson is dismissed, the conspiracy claims against Boggs and Tyson predicated on the formation of TDI cannot survive.

{77} Plaintiffs also allege that Carl A. Boggs, III, KLJ, C. Mark Tyson and TDI conspired with Boggs and Tyson to aid them in breaching their fiduciary duties to

Plaintiffs by forming TDI. (Am. Compl. ¶¶ 326, 333, 341, 350.) Because this Court concludes that Boggs and Tyson owed Plaintiffs no fiduciary duties, there is no surviving underlying claim of unlawful conduct upon which Plaintiffs can maintain a civil conspiracy claim against Carl A. Boggs, III, KLJ, C. Mark Tyson, and TDI. Therefore, Plaintiffs' civil conspiracy claims against Carl A. Boggs, III, KLJ, C. Mark Tyson, and TDI should be dismissed.

2.

AGREEMENT FOR SALE OF MEMBERSHIP INTEREST

{78} Plaintiffs also allege that Boggs, Tyson, and Glover conspired to breach their fiduciary duties by entering into the Agreement for Sale of Membership Interest, thereby depriving Plaintiffs of their beneficial interest in CGD. As discussed above, any claim for breach of fiduciary duty against Glover based on the conveyance of the Estate's membership interest in CGD to Boggs and Tyson is barred by collateral estoppel. Therefore, since Plaintiffs have no underlying claim for breach of fiduciary duty, the conspiracy claim based on the Agreement for Sale of Membership Interest must also be dismissed.

{79} Given that there are no surviving claims upon which Plaintiffs' claims for civil conspiracy can stand, the Court **GRANTS** Motions I and II as to the civil conspiracy claims and, therefore, **DISMISSES** Plaintiffs' civil conspiracy claims with prejudice.

E.

PUNITIVE DAMAGES

{80} To prevail on a claim for punitive damages, Plaintiffs must succeed on a claim for compensatory damages, and prove by clear and convincing evidence that at least one of the following aggravating factors was present: fraud, malice, or willful or wanton conduct. N.C. GEN. STAT. § 1D-15 (2013); *Sellers v. Morton*, 191 N.C. App. 75, 85, 661 S.E.2d 915, 923 (2008). Here, Plaintiffs bring a claim for punitive damages based on all claims against Defendants I and II, alleging that their conduct constituted a willful and wanton disregard for Plaintiffs' interests.

{81}   Because a claim survives against Glover, and Plaintiffs allege he acted willfully, Plaintiffs' claims for punitive damages against Glover and P&C also survive at this stage.[10]   However, the Court has dismissed all underlying claims for compensatory damages against Defendants I.  As such, Plaintiffs' claims for punitive damages against Defendants I are also dismissed.

{82}   Accordingly, the Court **GRANTS** Motion I as to Plaintiffs' punitive damages claims against Defendants I, and **DENIES** Motion II as to Plaintiffs' punitive damages claims against Defendants II.  Plaintiffs' punitive damages claims against Defendants I are **DISMISSED** with prejudice.

V.

PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY

{83}   Based on the foregoing, and having considered Motion III and the briefs in support of and opposition thereto, the Court **DENIES** Motion III.

VI.

CONCLUSION

{84}   The Court **GRANTS** Motion I, **GRANTS** in part and **DENIES** in part Motion II, and **DENIES** Motion III.

{85}   **WHEREFORE**, the Court hereby **DISMISSES** Plaintiffs' claims for breach of fiduciary duty by Boggs and Tyson; breach of fiduciary duty by Glover and P&C predicated on: (i) the conveyance of the Estate's membership interest in CGD to Boggs and Tyson, and (ii) preferential treatment to Sharon Moser to Plaintiffs' detriment; civil conspiracy; punitive damages against Defendants I; and all claims brought by Justin Todd Wortman in his representative capacity as Successor and Trustee of the Dan L. Moser Trust.

**SO ORDERED**, this the 29th day of October, 2013.

---

[10] All of Plaintiffs' claims against P&C are based on Glover's actions in his role as Administrator of the Estate and as a partner or shareholder in P&C.  (Am. Compl. ¶¶ 125–28, 362, 373.)